### SELIGMAN v. SELIGMAN et al.

(Supreme Court, Special Term, New York County. February 24, 1915.)

1. WILLS (§ 821*)—CONSTRUCTION—RIGHTS ACQUIRED.

A bequest of bonds to a legatee, to pay the income to testator's two brothers, charges the bonds with payment of the income, and the gift of income is a gift of one-half to each brother for life.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 2114–2119; Dec. Dig. § 821.*]

2. WILLS (§ 695*)—CONSTRUCTION—ACTIONS—RIGHTS OF PARTIES.

The rights of one, when derived from a will, must be determined in a suit to construe it, and not by an independent action.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1665–1669; Dec. Dig. § 695.*]

3. WILLS (§ 524*)—CONSTRUCTION—ESTATES ACQUIRED.

A bequest of a specified sum to each of testator's grandchildren, "being or becoming the issue of my daughter," to be paid on the grandchildren attaining full age, is a direct bequest to a class, vesting in interest at testator's death; the quoted phrase embracing issue in being when the will was written and such issue as come into existence between that time and testator's death.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1116–1127; Dec. Dig. § 524.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. WILLS (§ 728*)—CONSTRUCTION—VESTED INTEREST—ACCRUED INCOME.
Where a legacy, payable on the legatee attaining full age, was vested-
in interest from the time of testator's death, the accrued income be-·
longed to the legatee.
[Ed. Note.—For other cases, see Wills, Cent. Dig., § 1759–1780; Dec..
Dig. § 728.*]

5. TRUSTS (§ 217*)—INVESTMENTS—DIRECTION TO TRUSTEES.
A direction by testator that bonds shall be put in trust, and so kept so-
long as they pay interest, should be followed by testator's trustee.
[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 301–304, 306–309;
Dec. Dig. § 217.*]

6. WILLS (§ 684*)—CONSTRUCTION—ESTATES ACQUIRED—"INTEREST."
A will which directs testator's trustees to hold property in trust for a
daughter, páying to her for life the "interest" of about half of the net
income, the remaining portion to be invested and added to the trust fund,
to accumulate, and after 10 years the daughter to .receive the full "inter-
est," instead of about half, gives to the daughter a half of the income for
10 years, and thereafter the whole of the interest for life, for the word
"interest" means income.
[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1614–1628; Dec.
Dig. § 684.*
For other definitions, see Words and Phrases, First and Second Series,
Interest.]

7. PERPETUITIES (§ 9*)—VALIDITY—ACCUMULATION OF INCOME.
The provision for accumulating half of the income for 10 years is in-
valid, under Personal Property Law (Consol. Laws, c. 41) § 16, and the in-
come so directed to be accumulated must go to the daughter as the one-
entitled to the next eventual estate.
[Ed. Note.—For other cases, see Perpetuities, Cent. Dig. §§ 67–73; Dec.
Dig. § 9.*]

8. PERPETUITIES (§ 4*)—VALIDITY—REMOTENESS.
Where testator created a trust fund, to pay the income to a daughter
for life, and at her death to grandchildren in equal portions absolutely,
and after the- death of each grandchild, without issue, his or her portion
in trust for his or her brothers or sisters, and after the death of the sur-
vivor, if there be no issue of any of them, the trust fund to be divided in
equal parts as specified, the gift to the grandchildren was intended to
take effect after the termination of the equitable life estate, and the gift
to the grandchildren and the alternative gift over were too remote in
vesting.
[Ed. Note.—For other cases, see Perpetuities, Cent. Dig. §§ 4–44; Dec.
Dig. § 4.*]

9. PERPETUITIES ·(§ 7*) — SUSPENSION OF POWER OF ALIENATION — LIFE IN
BEING.
A gift to trustees, in trust for a granddaughter, with direction to invest
the income for 5 years, and after 5 years, at the pleasure of the mother,
the trustees to pay the interest to the granddaughter, and on her marry-
ing with the consent of her mother to pay her the capital, with ac-
cumulated interest, but, should the granddaughter not marry, the trus-
tees should hold the securities in trust and pay to her the income, and in.
the event of the granddaughter predeceasing her mother the whole of the
fund should revert to the mother, created a trust for the granddaughter,
with contingent remainders to her or to her mother in the alternative,
and the provision, so construed, did not suspend the absolute ownership
for more than a single life.
[Ed. Note.—For other cases, see Perpetuities, Cent. Dig. §§ 48, 54, 55;
Dec. Dig. § 7.*]

---

*For other cases see sáme topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes·

10. PERPETUITIES (§ 6*)—SUSPENSION OF POWER OF ALIENATION—LIFE IN BEING.

A provision in a will creating a trust fund for the payment of annuities out of the fund for a period of years does not suspend the absolute ownership within the statute, since the annuities need not be paid out of the income, and are alienable.

[Ed. Note.—For other cases, see Perpetuities, Cent. Dig. §§ 4–47, 49–53, 56; Dec. Dig. § 6.*]

11. PERPETUITIES (§ 9*)—ACCUMULATION OF INCOME—VALIDITY.

A provision in a will creating a trust fund, in trust for a granddaughter, that the income of the fund shall be invested for 5 years in securities, and thereafter the whole interest shall be paid to the granddaughter, is invalid, under Personal Property Law, § 16, and the income for the 5-year period must go presumptively to the granddaughter as the person entitled to the next eventual estate.

[Ed. Note.—For other cases, see Perpetuities, Cent. Dig. §§ 67–73; Dec. Dig. § 9.*]

12. WILLS (§ 684*)—CONSTRUCTION—ESTATES ACQUIRED.

Testator gave corporate securities to trustees in trust for a granddaughter, and directed the trustees to invest the income for five years, and after five years, at the pleasure of the daughter, to pay the whole interest "on the above interest to" the granddaughter, and on the day of the granddaughter's marriage with the consent of her mother she should receive the whole of the capital, with the accumulated interest, and should the granddaughter not marry, or "until such time as she do get married," the trustees should hold the securities in trust and pay to her "interest on this income," and pay out of the trust fund for the next 5 years annuities to persons named, and should the granddaughter predecease her mother the whole of the trust fund should revert to the mother. Held, that testator meant that the income on the entire trust fund, which was made up of the original fund, plus the investment made on the first five years' income, should be paid to the granddaughter.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1614–1628; Dec. Dig. § 684.*]

13. WILLS (§§ 456, 462*)—CONSTRUCTION—INTENTION OF TESTATOR.

The court, in construing a will, must find a rational scheme of disposition, if that can be done, though it is necessary to supply words and phrases, or to give those in the will a meaning other than that they ordinarily have.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 974, 981; Dec. Dig. §§ 456, 462.*]

Action by David A. Seligman, as executor and trustee of David Kohn, deceased, against David E. Seligman and others, to construe the will of the deceased. Judgment ordered.

Wise & Seligsberg, of New York City (Alfred F. Seligsberg and Isaac Lande, both of New York City, of counsel), for plaintiff.

Isaac H. Levy, of New York City, for defendant Edith Seligman.

William L. Cahn, of New York City, guardian ad litem, for defendant Eleanor Seligman.

Guy T. Murray, of New York City, for defendant Simon.

Frank Talbot, of Gloversville, for defendant Peck.

Harry W. Mack, of New York City, for defendant Adler.

Samuel C. Herriman, of New York City, guardian ad litem, for defendants Singer.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

GIEGERICH, J.   The action is brought by the executor and trustee under the last will and testament of David Kohn, deceased, for a judicial construction of that instrument.   The testator, David Kohn, died at Frankfort, in the empire of Germany, on the 23d day of March, 1910, a resident of the county and state of New York, leaving surviving him no widow, but leaving surviving him as sole heir at law and next of kin the defendant Edith Seligman, a daughter, his sole surviving child, who was born in 1879.   The defendant Edith Seligman has but one child, the infant defendant Eleanor Seligman, who is now about 12 years of age and lives with her parents in London, England, and her father, Arthur Seligman, is her general guardian.   The testator left a last will and testament as follows:

"I, David Kohn, of the borough of Manhattan, city, county and state of New York, at present residing in Nice, republic of France (Alpes Maritimes), being in good bodily health and of sound and disposing mind and memory, do make, publish and declare this to be my last will and testament, hereby revoking any and all other wills and codicils by me heretofore made.

"I. I give and bequeath to my sister-in-law, Helene Pick, now known as Helene Peck, who for years has been a devoted member of my family, the sum of 25,000 (twenty-five thousand) dollars; and furthermore, 7,000 dollars (seven thousand dollars) five per cent. general mortgage bonds of the St. Louis & San Francisco Railroad, which are now registered in my name and are on deposit at the National & Provincial Bank of England, at 112 Bishopsgate street, London, England, the income derived from these seven bonds to be divided by the said Helene Pick, or Peck, between her two brothers, Theodore Pick and Emil Pick, both residing in Vienna, Austria.   To my niece, Baby Weisl, of Vienna, Austria, the sum of five thousand kronen (5,000 kronen).   I also give and bequeath the sum of one one thousand dollars ($1,000) to be divided equally as follows: $500 to the Home for Aged and Infirm Hebrews in the city of St. Louis, Missouri, and $500 (five hundred dollars) to the Hebrew Hospital in the city of St. Louis, Missouri, both in memory of my beloved wife, Sophie Fischel, wife of David Kohn.   A tablet shall be placed in the home and in the hospital bearing the following inscription: 'In memory of Sophie Fischel, wife of David Kohn.'

"II. I give and bequeath the sum of 2,000 kronen (two thousand kronen) to my nephew, Moritz Singer, of Neiern, Bohemia, to pay off the indebtedness on his house.

"III. I also give and bequeath to each of my grandchildren being or becoming the issue of my daughter, Edith Seligman, the sum of $10,000 (ten thousand dollars), to be paid to them upon arriving at the age of twenty-one years.   I hereby enjoin my dearly beloved daughter and my son-in-law to faithfully regard and follow the advice which I now write down for their benefit: To be saving and take very little risk.   To lend no money to others, nor indorse for others, for my experience in this respect has been unfortunate; rather give what you can afford, and let it go at that.

"IV. I also give and, bequeath to my nephew, Josef Lustig, of San Francisco, California, the sum of $1,000 (one thousand dollars).

"V. I hereby desire that all bonds which are registered in my name, and also all unregistered bonds, shall be put in trust with my administrators and executors, whom I hereafter designate, to be kept by them so long as they pay interest.

"VI. I hereby appoint David A. Seligman, the son of Abraham Seligman; David E. Seligman, the son of Leopold Seligman; Julian Seligman, the son of Henry Seligman, and Charles D. Seligman, son of Isaac Seligman, all of London, England, my administrators and executors, without any bonds, and beg that they will continue to act as such, having full confidence in their ability and honesty.

"VII. I appoint my executors named in clause No. VI of the said will my absolute trustees for all my estate, real, personal and mixed in England, to hold all this estate, after paying out all the expenses and all my bequests, in

trust for my daughter, Edith Seligman, paying out to her during her life-time the interest of about half of the net income, either quarterly or half-yearly, as may be most convenient, the remaining portion to be invested in New York city bonds and added to the trust funds to accumulate. After ten years my said daughter Edith shall receive the full interest instead of about half. At my daughter's death this income shall go to my grandchild or grand-children in equal portions absolutely. After the death of each of my grand-children, if there be no issue, his or her portion to be held in trust for his or her brothers and sisters, and after the death of the last dying, if there be no issue of any of them, the trust funds shall be divided in three equal parts as follows: One part to be equally divided amongst the relations of my three brothers; one part to be equally divided amongst the relations of my two sisters, and one part to be equally divided amongst the relations of my poor deceased wife as follows: Her one sister, Helene Peck, or Pick, and her four brothers, Adolph Pick, Theodore Pick, Bendel Pick and Emil Pick. I wish to be buried in my vault at Salem Fields, belonging to the Congregation Temple Emanuel, New York. To save my administrators and executors in London some trouble and to facilitate matters in the United States, of America, I therefore appoint I. M. Simon, of the city of St. Louis, Missouri, and Max Akerland, of Cincinnati, Ohio, my nephews by marriage, to be trustees for my dear granddaughter Eleanor, without giving bonds, as I have the utmost confi-dence in them, to receive all my bonds, stocks and cash from the First National Bank, New York, and from Newborg & Co., and from Simon, Brookmayer & Clifford, St. Louis, Missouri, and to keep all these securities in trust for my dear granddaughter Eleanor, and I wish the income from the above mentioned trust to be invested for five years in New York city bonds or St. Louis city bonds, and after five years at the pleasure of my dear daughter Edith they shall pay the whole interest on the above income to my granddaughter Elea-nor, and on the day of my said granddaughter Eleanor's marriage with the consent of her mother, she shall receive the whole of this capital with its ac-cumulated interest as a dowry. Should, however, my said granddaughter not get married, or until such time as she do get married, the above mentioned trustees shall hold in trust the aforementioned securities and pay to my grand-daughter Eleanor half-yearly the interest on this income. They shall also pay out of this trust fund for the next five years the sum of one hundred dol-lars each year to my; nephew, Albert Singer, and one hundred dollars each year to my nephew, Joseph Lustig, or his son, who is an invalid, and lives in the city of San Francisco, California. Should my said granddaughter Eleanor predecease her mother, the whole of this trust fund shall revert to her mother.

"In witness whereof, I have hereunto set my hand and seal this 13th day of November, one thousand nine hundred and eight (1908).

"Testator, David Kohn.  [Seal.]

"Witnesses: Joseph Van Dam, Rue Droite 26, Villefranche sur Mer; Reginald P. Parker, Villa du Lierre, Bd. du Tsarewitch, Nice.

"Consulate of the United States of America, City of Nice, Republic of France—ss.:

"I, Harry A. Lyons, vice and deputy consul in charge of the United States consulate within and for the city and republic aforesaid, do hereby certify that the signature of David Kohn to the above instrument, consisting of four pages, is true and genuine, made and acknowledged in my presence, and that the signatures of Joseph Van Dam and Reginald P. Parker, witnesses to the the above instrument, and whose signatures are true and genuine, made in the presence of each other and in the presence of David Kohn, in my pres-ence with full knowledge of what they were certifying.

"In witness whereof, I have hereunto set my hand and affixed my official seal this thirteenth day of November, one thousand nine hundred and eight. [Signed]  Harry A. Lyons, vice and deputy consul in charge at the Consulate of the United States of America at Nice, France.  [Seal]  American Consulate Service fee stamp, $2.  19 November, 1908."

Although the testator was not a lawyer, he drew the will himself. The testator died possessed of no real property either within or without

the state of New York. His last will and testament was duly admitted to probate in the Surrogate's Court of the county of New York on February 24, 1911, and letters testamentary were duly issued by one of the surrogates of the county of New York to the plaintiff as sole executor, the other executors named in the will having renounced the appointment, and the plaintiff has qualified as such executor and has ever since been and is now acting as such. The decedent left sufficient estate to pay all the pecuniary legacies, bequests, and charges specified in the will and all his debts, and also left seven $1,000 5 per cent. general mortgage bonds of the St. Louis & San Fransisco Railroad mentioned in the first subdivision of the first clause of the will, and a large amount of securities, consisting of bonds, in England, and securities, consisting of bonds and stocks and cash, in the United States. The value of the English estate is estimated at $243,560, and the value of the American estate is approximately $89,000. Since the death of the testator, Helene Peck (or Pick) and Theodore Pick, mentioned in the will, have departed this life. Taking up the several questions presented in the order in which they arise upon the face of the will, I have reached the following conclusions:

[1, 2] The $7,000 of St. Louis & San Francisco bonds mentioned in the first clause of the will were given to Helene Pick and should be delivered to her executor. This gift was, however, charged with the payment of the income to her brothers, and their rights, being derived from the will now under construction, should be determined in this action, and not, as suggested by plaintiff's counsel, in an action to be brought against the executor of Helene Pick. I am of the opinion that the gift of the income of the bonds was intended to be a gift of one-half of such income to each of the brothers during their respective lives, and that the income which has or may come into the hands of the executor should be distributed on this principle; the share of Theodore which had accrued to the time of his death to be paid to his representatives. The executor of Helene Pick should be directed to pay one-half of the income which shall hereafter come into his hands to Emil during his natural life.

[3] The gift of $10,000 to each of the testator's grandchildren, the issue of his daughter, contained in the third clause of the will, was a simple and direct gift to a class, vesting in interest at the testator's death, and the members of the class are therefore to be determined as of that time. Matter of Brown, 154 N. Y. 313, 326, 48 N. E. 537. The language, "being or becoming the issue of my daughter," is to be understood as intended to embrace issue in being when the will was written and such as should come into existence between that time and the testator's death. The defendant Eleanor Seligman is the sole possible beneficiary under this clause of the will, and the executor need therefore retain only the sum of $10,000 for the purpose of carrying out its provisions.

[4] Since the gift was vested in interest from the time of the testator's death, the share of the accrued income to which this sum may be entitled, as well as such as may be earned upon the specific fund when it is set aside until the time for payment of the legacy arrives, will

belong to the legatee.  Smith v. Edwards, 88 N. Y. 92, 103, 109; Miller
v. Gilbert, 144 N. Y. 68, 73, 38 N. E. 979; Matter of Conger, 81 App.
Div. 493, 500, 80 N. Y. Supp. 933; Matter of Becker, 59 Misc. Rep.
135, 112 N. Y. Supp. 221.

[5] The directions of the fifth clause of the will should be followed
by the trustees.  Duncklee v. Butler, 30 Misc. Rep. 58, 62 N. Y. Supp.
921.  See Lawton v. Lawton, 35 App. Div. 389, 54 N. Y. Supp. 760.

[6] As to the trusts attempted to be created relative to the testator's
property in England by the first and second subdivisions of the seventh
clause of the will, I am of the opinion that the trust for the benefit of
the defendant Edith Seligman should be sustained, but that all the oth-
er dispositive provisions of the first, second, and third subdivisions of
clause VII are void. ' I think the word "interest" in the expression
"interest of about half of the net income" should be understood, as
suggested by the learned guardian ad litem for the grandchild, as
meaning an interest equivalent to half the income.  It is true that
the word "interest" in other parts of the clause is used in the sense of
a return upon moneys invested.  Reading the clause as a whole, how-
ever, I cannot think that he in any case contemplated the mere gift of
income upon income.  It follows that, under the valid provisions of the
will, the defendant Edith Seligman will be entitled to one-half the in-
come from the trust fund created by the first subdivision of this clause
for 10 years following the testator's death, if she live so long.  There-
after, under those provisions, she will be entitled to the entire income
as long as she lives.

[7] The provision for accumulation of half the income for the pe-
riod of 10 years is invalid (Personal Property Law, § 16), and the in-
come so directed to be accumulated, now accrued, and as it hereafter
accrues, must go to the person presumptively entitled to the next even-
tual estate.  St. John v. Andrews Institute, 191 N. Y. 254, 83 N. E.
981, 14 Ann. Cas. 708.  Such person is the defendant Edith Selig-
man, who is given an equitable interest for life in the entire fund from
the time when the accumulation was to come to an end.  Manice v.
Manice, 43 N. Y. 303, 385; Pray v. Hegeman, 92 N. Y. 508, 519

[8] The attempted gift of the income to grandchildren for their
lives is, I think, void.  The gift not being immediate, but only to take
effect after the termination of the first equitable life estate, must be
understood to have been intended as a gift to a class whose members
were to be determined at that future time.  Persons answering the de-
scription may yet be born.  Hence the class was intended to include
grandchildren who might not be in being at the death of the testator.
This is both the natural meaning of the language used and the estab-
lished construction in such cases (Bisson v. West Shore R. R., 143 N.
Y. 125, 38 N. E. 104), and it will not do to adopt a different construc-
tion merely for the purpose of saving the gift from the operation of
the statute (Central Trust Co. v. Egleston, 185 N. Y. 23, 77 N. E.
989).  If an ultimate gift of the absolute interest in the trust fund to
the issue, if any, of the grandchildren, might be implied from the lan-
guage of the second subdivision of the seventh clause, still both this
gift and the alternative gift to the collateral relatives were not only

obviously dependent upon the enjoyment of the equitable life estates by the grandchildren, but they were too remote in vesting. Matter of Wilcox, 194 N. Y. 288, 87 N. E. 497. I conclude, therefore, that, except for the trust estate for the benefit of his daughter Edith, the testator died intestate as to so much of his property in England as was included in that trust. Clark v. Cammann, 160 N. Y. 315, 54 N. E. 709; Matter of Wilcox, supra.

[9] As to the remaining provisions of the seventh clause of the will which relate to the testator's property in the United States, I am of the opinion that a trust was created for the benefit of the granddaughter Eleanor and the annuities mentioned, with certain contingent remainders to Eleanor or to her mother in the alternative, as the contingencies may happen. I do not think that the provisions of the will in regard to this property suspend the absolute ownership for more than a single life. If Eleanor shall die unmarried at any time before her mother, the trust will come to an end, and the fund will immediately vest in her mother in absolute ownership, except for the charge of the annuities, which may be disregarded, as will be shown. If Eleanor should marry with her mother's consent, either before or after the expiration of the five years, the fund would either vest in her absolutely or it would vest subject to being divested in favor of her mother upon her predeceasing her mother—alternatives which do not require to be decided now, and which may never require to be adjudicated. In either event the absolute ownership would not be suspended beyond the life of Eleanor. Should the mother predecease the daughter, and the latter die unmarried, the trust fund would immediately vest in the next of kin of the testator, no disposition of it in such a contingency having been made by the will. If Eleanor should marry at any time in the lifetime of her mother, but without her consent, or if she should marry after her mother's death, there might be some question as to what disposition was intended in that event. That question need not be determined now, for it may never arise. Neither of these contingencies, however, would result in an unlawful suspension of the absolute ownership of the fund.

[10] The provision for the payment of certain annuities out of the fund for a period of years does not suspend the absolute ownership within the meaning of the statute, since the annuities are not required to be paid out of the income of the trust fund and are therefore alienable. Wells v. Squires, 117 App. Div. 502, 102 N. Y. Supp. 597.

[11] The provision for the accumulation of income not being for a purpose permitted by the statute (Personal Property Law, § 16), the income for the period of five years, accrued and as it hereafter accrues, must go to the person presumptively entitled to the next eventual estate. This person is the defendant Eleanor Seligman, who is presumptively entitled to the entire income from and after the period fixed for the accumulation. Pray v. Hegeman, supra.

[12] We must now endeavor to ascertain somewhat more definitely what the testator's purpose was with regard to his property in the United States, so as to determine the precise interest which shall be adjudged to vest in the granddaughter Eleanor. It seems to me that the

testator intended that the income from this property should be accumulated for five years provided Eleanor lived so long and, perhaps, unless she married within that time. This accumulation he desired to be invested in certain bonds and to become a part of the capital of the trust. This was the only accumulation he directed, and I think it was all he intended. After this accumulation should have been accomplished and added to the trust fund, I think he intended to dispose of the entire income of the fund so augmented. In the event of Eleanor's marriage with her mother's consent, he certainly did, for he gave her the entire fund with its accumulation. If she should remain unmarried, he did not intend her to come into possession of the capital of the trust at all; but I have no doubt he intended her to have the entire income. This was all very natural. But it would be very unnatural to suppose that he ever intended to limit Eleanor's interest, while unmarried, to the mere income upon the income of the estate, and much more so to suppose that he intended to limit her to the income upon such income as could be accumulated and invested in the five years following his death. Yet the last is the literal meaning of his language when he makes use of the expression "interest on the above income." When he later employs the phrase "interest on this income," it would be difficult to say whether the literal meaning was the income upon the income which had been accummulated and invested within the five years, or the income upon the income of the entire trust fund. I am satisfied that he meant neither the one nor the other, but that he meant the income upon the entire fund, which was made up of the original fund, plus the investment made from the first five years' income. He had expressly created the trust "for my dear granddaughter Eleanor," and he probably supposed that this was enough in itself to give her the income from the fund. But he wished to accumulate and invest the income for five years, and to add this investment of income to the capital of the trust. So I think what he meant to say was:

"And after five years (until which time no income at all will be available for distribution) at such times as my daughter Edith shall think proper, they shall pay the whole interest on the invested income (as well as the income from the original fund) to my granddaughter Eleanor."

Then follows the provision that upon Eleanor's marriage, with her mother's consent, she shall receive the entire trust fund with its accumulations. Then, quite unnecessarily, the testator reverts to the situation in the event of Eleanor's remaining unmarried, either indefinitely or for a time, and he repeats the provision already made, namely, that in that case the trustees shall hold the aforementioned securities (meaning the securities in which the accumulated income had been invested) and should pay to Eleanor the income on that investment of income—it being taken for granted that she was to receive the income of the original fund expressly created for her benefit. It is true that some liberties are necessarily taken with the testator's language in reaching this result, but the whole will is so inartificially written, and so much is left out which would be necessary to make a reasonably complete and intelligible disposition even of the corpus of

his property, both in this country and in England, that I have less hesitation in dealing freely with his disposition of the income.

[**13**] The court is bound to find a rational scheme of disposition in the will, if it can be done, and even though it be necessary to supply words or phrases or to give those which are in the will a meaning other than they ordinarily bear. Roe v. Vingut, 117 N. Y. 204, 22 N. E. 933. For the present it is only necessary to adjudge that the trust for Eleanor is valid; that she.is entitled to the income ineffectually sought to be accumulated; that after the expiration of the five years she will be entitled to the entire income of the fund, to be paid during her minority at such times as her mother shall indicate; and after she shall attain her majority, to be paid half yearly. Any power in her mother, if such was intended, to postpone payments and thus accumulate income after the majority of Eleanor, would be ineffective. What shall be done with the fund or its income upon Eleanor's marriage, with or without her mother's consent, is a matter which need not now be adjudicated.