This bill is by the trustee seeking advice as to its duties under the will of Brenton Tomkins, deceased.
After three specific bequests, two in trust to his executor for life interests, with remainder over, and one outright for life, with remainder over, the testament continues —
"Fourth. All the rest, residue and remainder of my property, real, personal and mixed, of whatsoever nature, kind or description the same may be and wherever situate, I give, devise and bequeath unto my executor and trustee hereinafter named, to convert the same into cash and to divide the same into two equal parts; and I direct my said executor to pay the income from one of said parts as follows:"
The division is in fractional shares for lives of persons successively with remainder to definite but unascertained legatees, issue of ultimate life interest holders. The other half was directed to be paid to the testator's brother, Ambrose Tomkins, the complainant. The corpus of the latter half was charged with the payment of $6,000 annually for life to the testator's widow and $1,500 for life to his nephew, Dudley Morrison, the latter to be paid by the trustee in the manner stated in the second paragraph of the will. The trustees were given power to reinvest "the principal of said trust fund in bonds or mortgages." A codicil followed which recites that the testator since making his will had rented a cottage in Bermuda at three hundred pounds per annum upon which he had commenced extensive improvements, and then it continues —
"Now, therefore, I do change said fifth paragraph of my will so that the same shall read as follows:
"Fifth. The other one-half of my estate I direct my said executor to pay to my brother, Ambrose Tomkins; and if my said brother predeceases me, said one-half part shall be paid to his children in equal proportions, share and share alike. If any child shall have died leaving issue, such issue shall take their parents' share.
"The income on said one-half part of my estate shall be and is hereby charged with the payment of six thousand dollars per annum, which sum I hereby give and bequeath unto my said wife, Frances L. Tomkins, for and during the term of her natural life; and said income is also charged with the payment of the sum of fifteen hundred dollars per annum to my nephew, Dudley Morrison, which sum I *Page 500 
give and bequeath to said Dudley for and during the term of his natural life.
"The sums of six thousand dollars per annum given to my said wife for life, and of fifteen hundred dollars per annum given to my nephew, Dudley Morrison, for life, as well as the payments directed by this codicil [the rent of the cottage and cost of improvements] to be paid out of the income from said one-half of my said estate given to my said brother, Ambrose Tomkins, are hereby specifically made a charge on said income; and if said income from said one-half of my estate shall not be sufficient to pay the charges made against the same, then I do order and direct that any deficit there may be shall be paid out of the income from the first one-half of the residue of my estate, and which is mentioned in the fourth paragraph of my said will."
The question for decision is whether the gift to Ambrose is presently payable to him, the charges to be paid by him out of the income, or is the trustee to retain it, collect the income and pay the charges. There is nothing in the rest of the will inconsistent with the positive direction to the trustee to hold one-half of the estate upon further trusts, the other half to pay over. If the testator had intended that the latter was also to be held he would have so indicated, for he was then dealing with both methods. The first bequest, variously and successively for lives in being, before it reached its ultimate disposition, and then upon contingencies, required the intervention of a trustee to carry it into effect. The second, the gift was simple and direct, subject to charges. It was to a brother in whom the testator had confidence. It is true, as suggested, that the gift is of money, and if paid to the legatee may be dissipated or remain uninvested, and consequently the interests of the annuitants may suffer; and so they might if the testator had selected an irresponsible trustee. The testator's intention that the trustee should not intervene in the gift to the brother is marked by the direction to the executor to pay the charge of the cost of improvements to the cottage, obviously, because it called for immediate attention, while a similar duty is not imposed or exacted as to the other charges to be paid in installments over an indefinite and perhaps long period. There is no significance to the contrary in the change of the charges from the corpus, as made by the will, to the income, as directed by the codicil, except perhaps *Page 501 
to more clearly express the intention that the possession of thecorpus should be in the brother. Nor, in the power of the trustee to reinvest the trust fund, for there is a plurality of funds, exclusive of the bequest to the brother, to which this instruction may properly relate. Nor is there any in the charge of a deficiency in the widow's annuity upon the trust fund first created out of the residuary estate. The duty of the trustee in respect of this does not require the control by it of the gift to the brother; the deficiency is a thing apart. There is nothing found in the will or codicil that derogates from the legatee's legal right to possession of the legacy. There was in the will, in the direction to the trustee to pay the nephew Dudley Morrison's annuity, but even that was taken away by the codicil.
The direction to pay the legacy is in language unmistakable.
The testator's wish is the trustee's duty. He can absolve himself only by obeying. He has no concern with the charges. They follow the legacy. In re Denton, 102 N.Y. 200; Dinan v. Coneys,143 N.Y. 544; Seligman v. Seligman, 151 N.Y. Supp. 889; Phillips
v. Humphrey, 42 N.C. 194; Hines v. Hines, 95 N.C. 482. InKouvalinka v. Geibel, 40 N.J. Eq. 443, a gift of a fourth of the testator's estate to his widow for life, in money, was ordered paid over to her, the court observing that "if necessary to its safety security will be required."
If it would seem to the trustee that the testator has not provided sufficient safeguards for the payment of the annuities, it should not be overlooked that he was distributing bounty and that it was his privilege to confide in his brother's as in other respects he relied on his trustee's integrity to carry out the method he adopted for disposing of his estate.
The assets of the estate consist of $22,500 in cash and five hundred shares of Tomkins Brothers, a corporation. The defendant has elected, and that is his right, to take his share in kind.Huber v. Donoghue, 49 N.J. Eq. 125. Without the asking, the legatee has offered to secure the charges by proper injunction laid upon the transfer of the stock.
A decree will be advised directing the delivery of the legacy. *Page 502 
The decree may provide an injunction upon the transfer of the stock by the legatee. Tomkins Brothers, a corporation, has by stipulation submitted itself to the jurisdiction of the court, obligating itself to preserve the security of the stock. The bill may be amended to bring in the corporation as a party and the injunction extended to it to the extent of its stipulation.