FRANK GARDNER COX, JR., WILLIAM SELLERS COX and WILLIAM SELLERS, Guardian *ad litem* for William Sellers Cox, Jr.

Defendants Below, Appellants,

*vs.*

MARY G. SELLERS, ANNA SELLERS COX and FRANK G. COX, Defendants Below, Appellees.

JOHN H. SHIVELY and WILMINGTON TRUST COMPANY, a corporation of the State of Delaware, Trustees Under Item 8 of the Last Will and Testament of William F. Sellers, Deceased.

Complainants Below, Appellees.

*Supreme Court, On Appeal, July 28, 1943.*

LAYTON, C. J., RICHARDS, RODNEY, SPEAKMAN and TERRY, JJ., sitting.

*Robert H. Richards*, for appellants.

*Clarence A. Southerland* for Mary G. Sellers and Anna Sellers Cox.

LAYTON, Chief Justice, delivering the opinion of the court:

This is an appeal from a decree of the Court of Chancery construing the eighth item of the last will and testament of William F. Sellers, deceased.

The testator made his will on March 28, 1932, and died on June 14, 1933. For some years prior to the early part of 1933 when he resigned, he had been President of Edge Moor Iron Company; and at the time of making his will, and at death, he owned 5,385 shares of the cumulative preferred stock of the company out of a total issue of 5,712 of such shares, and 1,369 shares of the common stock out

of a total issue of 8000 common shares. Both classes of stock were of the par value of $100.00, and had equal voting rights. The preferred shares were entitled in liquidation or dissolution to be paid their par value and all unpaid dividends thereon before any payment to the holders of the common shares.

The Company operated at a loss for the year 1930, and thereafter during its existence. No dividends were ever paid on the common stock; and no dividends were paid on the preferred stock after October 1, 1931, the first dividend passed being that due on April 1, 1932. At the death of the testator the accumulations of unpaid dividends on the preferred stock amounted to $10.23 a share, and from that time until the final distribution of the assets of the company in dissolution proceedings the accumulations amounted to $19.20 a share, a total of $29.43.

The testator's will contained eight dispositive items. By item 1 certain bequests were made to the employees. By item 2, real estate in the State of New Jersey, valued for estate and tax purposes at $10,000.00, was devised in fee to his daughter, Anna Sellers Cox. By item 3, the testator's real estate in Brandywine Hundred, New Castle County, Delaware, and certain personal property, likewise valued at $129,000.00, were devised and bequeathed in fee to his daughter, Anna Sellers Cox. By item 4, he exercised a power of appointment under the will of his father in favor of his wife, Mary G. Sellers, the valuation of which was fixed at $27,000.00. By item 5, the residue of the estate, with the exception of the stock of the Edge Moor Iron Company, was divided into two approximately equal parts; and by the sixth item one of these parts, valued at $383,000.00, was given to his wife absolutely. By item 7, the other of said parts, valued at $373,000.00, was bequeath-ed to trustees in trust for his daughter for life with a power of appointment conferred on her exercisable through her last will and testament, failing the exercise of which the

principal of the trust was bequeathed to her children or the issue of such children.

The controversy arises over the provisions of the eighth item by which all of the Edge Moor Iron Company stock was bequeathed to trustees for the immediate benefit of the wife and daughter, valued for estate and tax purposes at $441,067.50, reading as follows:

"8. I give and bequeath all of my preferred and common stock of the Edge Moor Iron Company to my trustees hereinafter named and also any bonds or other securities of said company, in case it issues any such securities and I am the owner of them at the time of my death, to hold and to collect the net income therefrom and to pay over one-half of the net income to my wife Mary G. Sellers, for and during the terms of her natural life, and one-half of the net income to my daughter, Anna Sellers Cox, for and during the term of her natural life. Upon the death of my wife all the net income shall be paid to my daughter. I give to my daughter the same power of appointment of the principal of all of said shares by her will as is set forth in the last preceding paragraph hereof, and in default of such appointment I direct that the principal of said shares shall go as provided in said last preceding paragraph. In case, however, my wife survives my daughter, one-half of said shares shall continue to be held in trust during the life time of my wife and the income therefrom paid over to her as above set forth. In using the word 'shares' I intend to include any bonds or other securities of said company, if issued, of which I am the owner at the time of my death.

"The above disposition of my shares and any other securities of the Edge Moor Iron Company is subject to the following condition: That under no circumstances shall said trust terminate within ten years after my death, even though my daughter may die within said period, and I therefore authorize and empower my said trustees to continue said trust, at their sole discretion, for the lifetime of any descendant of mine living at the time of my death and during such continuance, to pay over the income therefrom to such persons as are entitled thereto under the terms hereof or under the terms of any testamentary appointment by my daughter or in default thereof, provided that at any time after ten years from the date of my death, my said trustees may at their sole discretion terminate said trust and make distribution of said shares to the parties entitled thereto. It is well known to the said trustees that the management of the Edge Moor Iron Company has been the chief work of my life, and I desire them so to control the securities of that company of which I die possessed as will

best conserve said investment. To this end, in addition to the powers heretofore given them, I give them full power to join in any changes or adjustments in the capital structure of said company and/or in any reorganization, consolidation or merger and with full voting powers. They shall also have the right to sell the securities of the Edge Moor Iron Company if in their judgment it is deemed wise to do so for cash and/or other securities, and in such case to hold the proceeds under the terms of this trust and to invest and reinvest said securities in first class securities at their discretion without being limited to what may be legal investments for trustees under the laws of the State of Delaware or of any other state, provided, however, that in case the securities of the Edge Moor Iron Company are sold so that my estate has no further interest in that company or in any corporation with which it is merged or consolidated, the said ten year provision shall not apply and said trust shall in such event continue for the respective lives of my wife and daughter, but in case my daughter predeceases my wife, it shall terminate as to one-half thereof upon the death of my daughter, and as to the remaining one-half upon the death of my wife."

On December 18, 1935, the Company was dissolved by action of its directors and stockholders, the trustees under item 8 voting in favor of the dissolution. At the time of the dissolution the company's assets less its liabilities were insufficient to pay the par value of its outstanding preferred stock and accrued dividends thereon and the par value of its outstanding common stock. The preferred stock received its par value and all accrued dividends whereby the capital deficit was largely increased. The common stock received shares of a new corporation in a ratio of one for one, valued for income tax purposes, at $136,000.00, or $17 plus a share.

The receivers in dissolution paid to the trustees under item 8 of the testator's will, the sum of $696,980.55 in cash, and delivered to them 1,369 shares of stock in the new corporation. The cash payment represented the par value of the preferred shares in the sum of $538,500.00, and $158,-480.55, the amount of the dividends accumulated thereon.

The trustees filed their bill in the court below seeking instructions whether the whole or a part of the sum of $158,480.55 should be paid to the life beneficiaries of the

trust as income, or retained by them as principal of the trust for the benefit of the remaindermen. It was decreed that the whole amount should be paid to the life beneficiaries as income. The remaindermen, grandsons and a great grandson of the testator, appealed.

In the court below, and here, the remaindermen contended that the testator's will clearly disclosed his intention that all the money and securities received by the trustees from the liquidation of the Edge Moor Iron Company should be held by them as the corpus of the trust under item 8 of the will; that if such clear intention is not to be found, yet the sum of $158,480.55, paid to the trustees as and for unpaid dividends accumulated on the preferred shares held in trust, should be as corpus for the reason that it was paid wholly from capital; and, in any event, the sum of $28,750, a part of the amount so paid to the trustees, should be held as corpus because it was contributed by the common stock held in trust to enable the larger sum to be paid.

None of these contentions was found acceptable by the court below. The question of testamentary intention was briefly disposed of by saying that the testator had definitely expressed his intention to give to the life beneficiaries the net income of the trust; that the trustees did not, in fact, sell the shares of stock held by them in trust; and that the testator did not direct that, in the event of the company's liquidation, all of the property received by the trustees should be retained as corpus thereby evidencing some intention to differentiate the treatment of the proceeds in the two situations of sale and liquidation. *Cox v. Sellers, ante p.* 50, 29 A. 2d 914.

We are unable to agree with the conclusion reached by the court below for the reason that this very human document ought not to be read with such legalistic strictness.

When the testator made his will he knew that the company had been operating at a loss for some time, and that the dividend on the preferred stock, payable ordinarily on

April 1, 1932, would be passed. No dividend had ever been paid on the common stock. Economic conditions were chaotic and the business outlook was in gloom. In these circumstances, after making liberal provisions for the natural objects of his affections, the testator by the eighth item of his will carefully segregated from the rest of his property his shares of stock in the Edge Moor Iron Company, and constituted those shares as the corpus of a separate trust. This trust was for the immediate benefit of his wife and daughter with the ultimate power of appointment vested in the daughter. It is not a case where the life beneficiaries are put to hardship for the benefit of the remaindermen; and, as we read the provisions, it is clear that his paramount concern was for his interest in the company the management of which, as he said, had been the chief work of his life. He referred to the shares of stock bequeathed in trust as an investment, and expressly enjoined the trustees so to control the shares as would best conserve the investment, defining the word "shares" so as to include bonds and other securities of the company which might be issued.

The language used by the testator is expressive of a bare hope and a lively fear; a hope that by competent management through a term of years and a possible betterment of conditions the trust shares would prove to be income producing; a fear that his investment in the company was in jeopardy, and that some drastic action might be necessary to save it. Based on hope, a period of ten years was fixed as the minimum life of the trust of the shares, after which time the trustees were authorized at their discretion, to terminate the trust and make distribution of the shares to the parties entitled thereto, subject to the right of the wife to receive for life the income from one-half of the trust fund. The testator's thought evidently was that at least ten years would be required to resuscitate the company and make his investment therein productive of income. But, at the same time, he feared that decisive action would prob-

ably be necessary to save all or a part of his investment; and, based on this fear, he gave to the trustees broad power to join in any change or adjustment of the company's capital structure, or in any reorganization, consolidation or merger, with full voting powers. He also expressly authorized the trustees to sell the securities held in trust, whatever they might be, for cash or other securities, and directed them to hold the proceeds under the terms of the trust; and he further provided that the condition or limitation of ten years as the minimum life of the trust of the shares should not apply if the trustees should no longer hold securities of the company or of a company with which it was merged or consolidated.

The express grant of full voting power to the trustees was clearly unnecessary to enable the trustees to vote the trust shares for ordinary purposes, and the grant must be taken as significant of the testator's apprehension that his investment in the company was in danger, and of his intention to give to the trustees full powers to vote the shares for any special purpose. The trustees did vote the shares in favor of the dissolution of the company, without which the corporation could not have been dissolved for want of the required two-thirds vote; and it does not appear that the authority of the trustees so to vote the shares, or the propriety of their action, has ever been doubted. The result was that the trustees received from the corporation the proportionate part of its assets in lieu of the shares of stock bequeathed in trust.

Assuming, as we must, that the testator had intimate knowledge of the financial condition and resources of the company, and of the then prevailing business conditions, he necessarily knew that the value of the preferred shares was to be reckoned, not from an income producing viewpoint, but in the light of the contractual preference which the shares enjoyed in relation to the corporate assets. No sale of the preferred shares, or other disposition of them

by way of adjustment of capital structure, reorganization or merger, would have been made in total disregard of the superior position held by the shares; and any value, above the par value, received for them, whether by sale in the strict sense, or by a fixation of value in a reorganization, consolidation or merger, would have reflected, in whole or part, the dividends on the shares accumulated and unpaid, at once ascertainable and separable from the par value of the shares. If the preferred shares had been sold to another in ordinary course, the entire proceeds of the sale would have passed to the trust as corpus by the express language of the will, no matter how much above the par value of the shares the sale price might have been; and upon any fixation of value in any reorganization, consolidation or merger, by necessary implication, the securities received in exchange for the shares would likewise have passed as corpus no matter to what extent the accumulation of dividends had been considered in the determination of a fair basis for the exchange of shares. In each of these possible situations whatever was received by the trustees in exchange for the preferred shares would be treated as an integration notwithstanding that, in theory, any value above the par value, would represent accumulated dividends, and, in that sense, income. It is, we think, unreasonable to suppose that the testator, having expressed his desire and purpose to have the trust shares so controlled as to conserve his investment in the company, was so inconstant in mind as to have intended a separation of value in respect of the preferred shares in a surrender of them to the corporation pursuant to a distribution of the corporate assets, the one remaining way in which a disposition of them could be made.

The corpus of the trust was the testator's investment in the company represented by the common and preferred shares. It was this corpus which the trustees were charged to conserve. To conserve is to save from loss, injury or distribution. It is incontestable that the amount of money

otherwise payable to the common shares in the dissolution of the company would be reduced to the extent of the allocation of corporate funds in discharge of the preference incident to the preferred shares. Taking from those funds derived from capital assets an amount in excess of $158,-000.00, nearly one-fourth of the cash paid to the trustees for the surrender of the preferred shares, and paying that amount to the life beneficiaries as income of the trust, works a very substantial depreciation of the corpus of the trust, and the result is utterly irreconcilable with the testator's clear design to have his investment in the company kept intact for the purposes of the trust.

Dividends received are income. In a corporate dissolution payments made to holders of cumulative preferred shares in accordance with the contractual preference are, in a legalistic sense, dividends although wholly paid out of capital; but we are entirely satisfied that the testator used the word "income" in the sense of recurrent payments made to the holders of the company's securities from earnings or surplus, and not in the sense of a distribution of capital in dissolution. Technically, the transaction or proceeding by which the trustees received value in exchange for the surrender of the trust shares was not a sale. Essentially, it was a sale, and, for the accomplishment of the testator's purpose, must be so regarded.

It is generally recognized that a will is to be examined in an effort to discover a rational scheme of disposition, or dominant purpose, and if found, to. give it effect, even though it is necessary to give to the words used a meaning other than they ordinarily bear, unless prevented by some positive rule of law. *Seligman v. Seligman,* 89 *Misc.* 194, 151 *N.Y.S.* 889; *In re Puett's Estate,* 1 *Cal.* 2d 131, 33 *P.* 2d 825; *Green v. Allen,* 132 *Me.* 256, 170 *A.* 504. This is no more than stating the principle that the testator's intention must be given effect if it is clearly ascertainable

from the language of the will and the surrounding circumstances.

In conferring full voting powers on the trustees for special purposes, the testator made no mention of a proceeding in dissolution. The doctrine of implied exclusion as a result of express mention, while a valuable aid in the discovery of intention in a proper case, ought not to be permitted to defeat the testator's manifest design and purpose to have the trustees hold in entirety as the corpus of the trust whatever was received by them for the shares of stock bequeathed to them as an entirety, whatever the method of the disposal of the shares.

It follows that the sum of $696,980.55 and the 1,369 shares of stock in the new corporation received by the trustees from the receivers in dissolution constitute the corpus of the trust under Item 8 of the testator's will.

Having reached this conclusion, it is unnecessary to consider the other questions at issue in this appeal.

The decree of the court below is reversed and the cause is remanded for such action in conformity herewith as may be necessary.